UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ALBERTO R.,                                                                    20-CV-01505-MJR
                                                                                   DECISION AND ORDER
                              Plaintiff,

          -v-

COMMISSIONER OF SOCIAL SECURITY,


                              Defendant.

_____

          Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States

Magistrate Judge conduct all proceedings in this case.  (Dkt. No. 14)

          Plaintiff Alberto R.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g)

and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social

Security ("Commissioner" or "defendant") denying his application for Disability Insurance

Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the Social Security

Act (the "Act").  Both parties have moved for judgment on the pleadings pursuant to Rule

12(c) of the Federal Rules of Civil Procedure.  For the following reasons, Plaintiff's motion

(Dkt. No. 12) is granted, defendant's motion (Dkt. No. 13) is denied, and the case is

remanded for further administrative proceedings.

_____
[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name
and last initial.

**BACKGROUND**[2]

Plaintiff filed for DIB and SSI on February 26, 2018, alleging a disability onset date of July 11, 2013. (Administrative Transcript ["Tr."] 175-82). The application was initially denied on June 12, 2018. (Tr. 103-12). Plaintiff timely filed a request for an administrative hearing. (Tr. 113-14). On August 30, 2019, Administrative Law Judge ("ALJ") John Benson held a video hearing from Lawrence, Massachusetts. (Tr. 31-51). Plaintiff appeared in Jamestown, New York with his attorney representative. A vocational expert also appeared and testified at the hearing. The ALJ issued an unfavorable decision on September 30, 2019. (Tr. 12-30). On August 18, 2020, the Appeals Council denied Plaintiff's request for review. (Tr. 1-6). This action followed.

**DISCUSSION**

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.      *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment

or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.*

- 4 -

§§404.1520(c), 416.920(c).  Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions:  first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1.  *Id.* §§404.1520(d), 416.920(d).  If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience.  *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.  Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record.  *Id.* §§404.1520(e), 416.920(e).  RFC "is the most [the claimant] can still do despite [his or her] limitations."  *Id.* §§404.1545(a)(1), 416.945(a)(1).  The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work."  *Id.* §§404.1520(f), 416.920(f).  If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act.  *Id.* §§404.1520(f), 416.920(f).  Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work."  *Id.* §§404.1520(g)(1), 416.920(g)(1).  If the claimant can adjust to other work, he or she is

not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.     *The ALJ's Decision*

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 11, 2013, the alleged onset date. (Tr. 18). At step two, the ALJ found that Plaintiff had the following severe impairments: learning disorder; attention deficit hyperactive disorder (ADHD); depression; and anxiety. (Tr. 18). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18-20). Prior to proceeding to step four, the ALJ determined that Plaintiff retained the RFC for work at all exertional levels that entailed: performing simple tasks that were not done at a high production rate pace, such as assembly line work; only occasional interaction with the public; and only occasional reading. (Tr. 20). At step four, the ALJ found that Plaintiff had no past relevant work. (Tr. 24). At step five, the ALJ found Plaintiff capable of performing jobs that exist in significant numbers in the national economy. (Tr. 24-25). Accordingly, the ALJ determined that Plaintiff has not been under a disability from since July 11, 2013, the alleged onset date. (Tr.25-26).

IV.     *Plaintiff's Challenge*

Plaintiff argues that the ALJ erred by failing to evaluate properly the functional effects of Plaintiff's ADHD symptoms and that the case must therefore be remanded. The Court agrees.

An ALJ may not draw negative inferences from "struggles" that could be manifestations of a claimant's mental illness. *See Jimmeson v. Berryhill,* 243 F. Supp. 3d 384, 391 (W.D.N.Y. 2017) ("Specifically, the ALJ repeatedly drew negative inferences from plaintiff's struggles with treatment compliance but did not distinctly consider whether such difficulties could be a manifestation of plaintiff's bipolar or impulse control disorders. Federal courts have recognized that failure to comply with treatment can be a direct result of bipolar disorder"). This concept has been directly extended to ADHD. In *Brown ex rel. J.B. v. Colvin,* No. 1:12-CV-1062 MAT, 2015 WL 1647094, at *5 (W.D.N.Y. Apr. 14, 2015), the Court held that remand was warranted when an ALJ characterized ADHD symptoms as behavioral "choices" despite finding ADHD was a severe impairment.

Here, a key limitation shown throughout the administrative record was Plaintiff's inability to manage time or keep a schedule. Evaluating psychologist, Dr. Christine Ransom, Ph.D., diagnosed Plaintiff with ADHD, and opined that Plaintiff would be unable to regularly attend to a routine or maintain a schedule up to 50% of the time. (Tr. 420). This is consistent with the reports of Plaintiff's employment specialist through Learning Disabilities Association, who identified barriers to working including arriving on time to appointments and time management. (Tr. 222). When Plaintiff was still in school, his management needs included frequent prompts to stay on task and assistance with time management. (Tr. 299). Plaintiff himself testified that he was fired from his last job due

to tardiness. (Tr. 38). He was late because he was "just struggling. Trying to get moving, get on a schedule, was a little tough for [him]." (Tr. 38).

In his decision, the ALJ rejected these limitations out of hand. He simply stated that "[t]ardiness, by itself, is not dispositive of an inability to work." (Tr. 22). The Court finds this conclusion inadequate for two reasons. First, while the ALJ does not state so expressly, he certainly intimates that Plaintiff's "tardiness" was a willful choice and not directly related to Plaintiff's ADHD symptoms. He fails, however, to offer any cogent explanation for such a conclusion, despite his own finding that Plaintiff's ADHD is a severe impairment and despite Dr. Ransom's opinion that tardiness and an inability to stay on schedule are symptoms of Plaintiff's ADHD. Second, the ALJ's statement that tardiness alone cannot establish an inability to work is wrong on its face or at least inaccurate as stated. If a claimant has a severe physical or mental limitation that causes regular tardiness or absenteeism, such limitation may cause the claimant to be unemployable. In fact, the vocational expert in this case testified that if an individual were to be off task 10% of a workday or were to be absent or tardy two workdays per month on average, such individual would be unemployable. (Tr. 49).

In sum, the Court finds that the ALJ erred by failing to evaluate properly Plaintiff's ADHD symptoms, specifically those of being unable to regularly attend to a routine and maintain a schedule, and that such error was not harmless. The case must therefore be remanded.

- 9 -

**CONCLUSION**

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No.

12) is granted, defendant's motion for judgment on the pleadings (Dkt. No. 13) is denied,

and the case is remanded for further administrative proceedings.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:      January 7, 2022
            Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge